# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

KIRBY V. MADISON, SR.                    CIVIL ACTION NO. 18–0175

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

CITY OF PATTERSON, ET AL.                MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Before the Court is a Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted, filed by the Defendants, the City of Patterson and Rodney Grogan, in his official and individual capacities (hereinafter collectively referred to as "the Defendants"). See Record Document 19. For the reasons which follow, the Motion To Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The factual allegations contained in the complaint are accepted as true and are as follows.[1] The plaintiff, Kirby Madison ("Madison"), was hired as an officer with the Patterson Police Department on February 1, 1998. See Record Document 16 at 2 ¶ 2. He alleges that throughout his employment, he had a "spotless employment record, free from disciplinary actions." Id. at ¶ 3. On January 1, 2010, defendant Rodney Grogan ("Mayor Grogan") was elected Mayor of the City of Patterson. In April of 2014, Samantha Mincey ("Mincey"), a cousin of Mayor Grogan, was hired as an employee of the Patterson Police Department and became a dispatcher. See id. at ¶ 5. On November 4, 2016,

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

Mincey had completed her shift and was standing outside getting ready to go home when she saw Madison exit the bathroom. She shouted out to Madison, in the presence of several witnesses, "Look at black mother f****er."[2] Id. at 3 ¶ 6. In response to Mincey's statement, Madison grabbed the front of his pants in his crotch area and motioned, stating "suck this" and "if you can't say nothing nice, don't say nothing at all." See id.

Thereafter, Mincey filed a written complaint against Madison. As a result of her complaint, both Mincey and Madison were disciplined. Mincey received one day suspension and Madison received three days.[3] See id. at ¶ 7.

According to Madison, on March 1, 2016, Mayor Grogan began "openly mocking and referred to [Madison] as a 'black monkey.'" Id. at ¶ 8. Madison further alleges that "this behavior was not in isolation in [his] working environment." Id. He complains that the defendants conducted no investigation into "the repeated discrimination/harassment [he] suffered based on his race" and that while he "repeatedly complained and/or opposed the unlawful race discrimination/harassment to Defendants, no action was taken." Id. at 3-4 ¶ 8.

On February 3, 2017, Mincey was terminated for poor performance and continuing use of inappropriate language in the workplace. Madison alleges that "[f]ollowing her termination, defendant Grogan again referred to [him] as a 'black monkey'" and that he

---

[2]According to Madison, "this was not the first time Mincey had made derogatory racial remarks directed at Petitioner and Petitioner had been subjected to racial remarks on numerous prior occasions, including July 19, 2016, when then Patterson Police Chief LaSalle called Petitioner a 'black mother f***er.'" Id.

[3]Madison notes in his complaint that the Human Resources Director is a first cousin of Mayor Grogan. See id.

"again complained and/or opposed defendant Grogan's comment to Defendants, yet, nothing was done." Id. at 4 ¶ 9.

Madison alleges that following Mincey's termination, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about March 21, 2017, wherein she complained about the November 4, 2016, incident and about what she perceived to be retaliation by others. See id. at ¶ 10. Madison contends that "over the objection of then Assistant Patterson Police Chief Gary Stevenson and Petitioner [Madison], defendants agreed to pay Mincey and her attorney $85,000.00 – without Mincey ever having to file a lawsuit – in May, 2017." Id. at ¶¶ 10-11.

Thereafter, according to Madison's allegations, a dispute began between Mayor Grogan and then Patterson Police Department Chief LaSalle regarding Mayor Grogan's "attempts to micro manage the police department in violation of state law." Id. at ¶ 12. He asserts that Mayor Grogan "began disciplining and/or terminating Patterson Police Department Officers without the authority of law." Id.

Madison alleges that after his complaints of race discrimination and harassment, Mayor Grogan "reopened the 'investigation' into the written complaint against [him], which had already closed and for which he had already served his suspension." Id. at 5 ¶ 12a. He contends that he was "not informed of the nature of Grogan's 'investigation,' and received no notice as to defendant Grogan's identity as the 'investigator' and/or his authority to do so" and that, at no time, was he "afforded the right to counsel and/or another representative." Id. He asserts that no communication was made to him about the reopened investigation by Mayor Grogan. Specifically, he alleges:

As a result of his complaints of race discrimination/ harassment, and over sixty (60) days after defendant Grogan reopened the "investigation" into [Madison], on November 4, 2017, defendant Grogan unilaterally terminated [Madison's] employment for "sexual harassment" – the same incident for which [he] had been suspended a year prior and without any adherence to, much less consideration of, the Peace Officer's Bill of Rights, La. R.S. 40:2531, *et seq.*, and the law.

Id. at ¶ 13.  Following his termination, Madison "immediately requested an appeal and review by defendant City's Board of Alderman as provided by law."  Id. at 7 ¶ 16.  He asserts that on "November 13, 2017, Petitioner requested that Defendants give him an opportunity to rebut the false allegation/reason for his termination, specifically, that he committed sexual harassment."  Id.  His request was denied.  Instead, Madison contends that "on November 22, 2017, defendants ignored Petitioner's lawful request and defendant Grogan responded that he, alone, was making the decision to terminate, that his decision is final, and that Petitioner has no right to appeal or review – all in violation of clearly established law."  Id.

Madison filed suit on January 26, 2018, in state court, alleging, inter alia, that he was wrongfully or improperly terminated by the City of Patterson.  See Record Document 1.  The Defendants removed Madison's suit to this court and, thereafter filed a motion to dismiss.[4]  See Record Documents 1 and 4.  Thereafter, Madison filed an unopposed motion for leave to file an amended complaint, which was granted.  See Record Documents 12 and 15.  In his amended complaint, Madison alleges that "Defendant Grogan does not possess the lawful authority to unilaterally terminate any police officer .

---

[4]Madison also filed a motion to remand, which was denied, as the parties agreed that the issues giving rise to the motion were curable.  See Record Documents 6, 27 and 30.

. . [because] pursuant to La. R.S. 33:423.7, the Mayor is vested only with authority to recommend termination to the Board and he does not possess authority to unilaterally terminate." Record Document 16 at 6-8 ¶¶ 15-17. He also asserts that because "defendant Grogan unilaterally terminated Petitioner without advising him of his rights under the law and greater than 60 days after the incident[,]" the termination was in violation of Louisiana Revised Statute 40:2531 and is absolutely null. <u>Id.</u> at 6 ¶ 14. Madison further contends, <u>inter alia</u>, that the Defendants violated his First Amendment right to "report, protest, and oppose unlawful race discrimination," his Fourteenth Amendment right to "liberty, good name, and reputation," his Fourteenth Amendment right "to be free from racial discrimination," and his Fourteenth Amendment right to "a property interest in his employment." Record Document 12 at 8-9 ¶¶ 18-18a. The Defendants have now re-urged their motion to dismiss, seeking dismissal of all of Madison's claims against them. <u>See</u> Record Document 19. Madison filed an opposition and the Defendants thereafter filed a reply. <u>See</u> Record Documents 21 and 26.

<b>LAW AND ANALYSIS</b>

**I.      Pleading Standards And The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F.2d 237, 243 (5th Cir. 1993) (citation omitted). However, a court may rely upon "documents incorporated into the complaint by reference [] and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted); see Fed. R. Evid. 201. Additionally, courts must accept all allegations in a complaint as true. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

A motion to dismiss is "viewed with disfavor and is rarely granted." Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011), quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." Colony Ins. Co. v. Peachtree Constr., Ltd., 647 F.3d 248, 252 (5th Cir. 2011). However, it must allege enough facts to move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. Determining whether the plausibility standard has

been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.

## II.    Analysis.

### A.    Mayor Grogan's Authority To Terminate.

Madison's first claim is that Mayor Grogan lacked authority to terminate him under state law.  See Record Document 16 at 6 ¶ 15.  The Defendants contend that Mayor Grogan had authority to terminate Madison by virtue of the City of Patterson's Home Rule Charter.[5]  See Record Document 19 at 6.  "In 1898, the Lawrason Act was passed setting forth a general legislative charter for all municipalities created after its effective date as well as for those created prior to its effective date which chose to accept its provisions.  It was the intent of the Act to provide a uniform type of government for all municipalities in Louisiana."  La. R.S. 33:321, Reporter's Notes–1950.  In Louisiana, all municipalities, by default, are governed by the Lawrason Act "except those municipalities governed by a special legislative charter or a home rule charter or plan of government adopted pursuant

---

[5]Neither party submitted the Home Rule Charter ("the Charter") for the City of Patterson.  Typically, failure to provide the Charter would be grounds for dismissal for failure to carry the burden of proof, particularly as the Home Rule Charter is not published by Westlaw, Lexis or any other publications to which this Court has ready access.  However, after conducting independent research, the Court has determined that it may take judicial notice of the Charter.  See e.g., Matter of Waller Creek, Ltd., 867 F.2d 228, 238 n.14 (5th Cir. 1989) (Court may take judicial notice of a city ordinance despite it not having been introduced into the record, as the power of a federal court to take judicial notice of legislative facts is less constrained than its power to take notice of adjudicative facts.); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (In considering a 12(b)(6) motion, a court may refer to matters of public record, and doing so does not convert the motion into one for summary judgment.).  Accordingly, the Court takes judicial notice of the Home Rule Charter for the City of Patterson.  The parties would be well-advised to attach certified copies of the Charter with any further pleadings they intend to file referencing such.

to Article VI of the Constitution of Louisiana." La. R.S. 33:321. The City of Patterson is governed by a Home Rule Charter, which became effective on January 1, 1993. The Charter grants the mayor, as chief executive officer of the city government, the power to:

> (2) Appoint, suspend, or remove all city government employees, appointive administrative officers, and appointed providers of professional services provided for, by, or under this Charter in accordance with the personnel policies. The mayor may authorize any administrative officer who is subject to the mayor's direction and supervision to exercise these powers with respect to subordinates in the officer's department, office or agency.
>
> (3) Direct and supervise the administration of all departments, offices, and agencies of the city government, except as otherwise provided by this Charter.

The Defendants take this language and conclude that Mayor Grogan "possessed the full authority to appoint, suspend, and remove any and all employees of the Patterson Police Department, including Madison." Record Document 19 at 6.

Madison counters this argument by citing to Louisiana Revised Statute 33:423.7, a part of the Lawrason Act. This section, enacted after the City of Patterson's Home Rule Charter was in effect, provides:

> Notwithstanding the provision of R.S. 33:423 or any other provision of law to the contrary, in and for the city of Patterson, the chief of police shall appoint and discharge police personnel subject to the budgetary limitations of the mayor and board of aldermen pertaining to the number of allotted positions for the police department.

La. R.S. 33:423.7. In response to this apparent conflict, the Defendants cite an advisory opinion from the Louisiana Attorney General and a judgment from the 16th Judicial District Court in and for the Parish of St. Mary, both of which concluded that Section 423.7 is unconstitutional. See La. Att'y Gen. Op. No. 95-465 (Nov. 21, 1995) and Grogan v. La.,

No. 127,615 (La. 16th J.D.C. 2014) (Record Document 19, Ex. A). Madison counters this response by asserting that the Defendants are requesting that this Court "make some sort of 'Erie guess' as to the constitutionality of La. R.S. [33]:423.7." Record Document 21 at 9. Madison also disputes the binding nature, or lack thereof, of the two opinions that concluded that Section 423.7 unconstitutional. See id. However, it is unnecessary for this Court to reach these issues at this juncture of the proceedings.[6]

The Defendants have chosen to essentially ignore Section 2-8 of the Code of Ordinances of the City of Patterson.[7] Section 2-8 is entitled "Chief of police" and provides in section (d) that

> [t]he chief of police shall hire and fire personnel within his department with the advice and consent of the mayor and city council; except that the chief of police department may suspend any officer or other employee of the police department for a period not to exceed ten days.

The Defendants summarily assert that this provision was "overruled by the enactment of the Charter." Record Document 26 at 5. However, they cite to no provision of the Charter in support of this proposition, much less attach such provision for this Court's review. There is clearly conflicting information as to the authority to fire Madison, and neither party has attached the provisions of the Charter or the Code of Ordinances in support of their

---

[6]The Court's own research also revealed a decision of the Office of the Louisiana Attorney General addressing questions by Mayor Grogan about his authority to issue and terminate police commissions. See La. Att'y Gen. Op. No. 15-0149 (Sept. 1, 2016). However, this opinion did not mention Louisiana Revised Statute 33:423.7. See id.

[7]Once again, the Court notes that this document was not submitted to the court. Again, the Court has done its own research and takes judicial notice of the Code of Ordinances of the City of Patterson.

positions.  The Court thus finds that Madison has stated a plausible claim as to whether Mayor Grogan had authority to fire him sufficient to survive a motion to dismiss.

**B.      Police Officer's Bill Of Rights.**

Louisiana Revised Statute 40:2531 "provides certain minimum standards for law enforcement officers under investigation with a view to possible disciplinary action, demotion or dismissal, including time limitations for the investigation." McMasters v. Dep't of Police, No. 13-C-2634, 2014 WL 886020 (La. Mar. 7, 2014).  Section B of Section 2531 provides:

> B.  Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:
>
> (1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation.  The police employee or law enforcement officer shall be allowed to make notes.
>
> . . .
>
> (4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.
>
> . . .
>
> (7) When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made.  Except as otherwise

provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. . . . The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. . . .

La. R.S. 40:2531.

Madison alleges in his complaint that Mincey "filed a written complaint with defendant Patterson against Petitioner, entitling Petitioner to all protections afforded by La. R.S. 40:2531, *et seq.*" Record Document 16 at 3 ¶ 7. He further asserts that "[a]fter Petitioner's complaints of Defendants' race discrimination/harassment, defendant Grogan reopened the 'investigation' into the written complaint against Petitioner, which had already closed and for which he had already served his suspension." Id. at 5 ¶ 12a. He continues by alleging that he "was not informed of the nature of defendant Grogan's 'investigation', and received no notice as to defendant Grogan's identity as the 'investigator' and/or his authority to do so" and that "[a]t no time [] was [he] afforded the right to counsel and/or another representative." Id. He contends that "[n]o communication was made to [him] about the reopened 'investigation' by defendant Grogan," and that "[a]s a result of [his] complaints of race discrimination/harassment, and over sixty (60) days after defendant Grogan reopened the 'investigation' into [him]," he was terminated on November 4, 2017, for sexual harassment. Id. at ¶ 13. Madison concludes that Mayor "Grogan unilaterally terminated Petitioner without advising him of his rights under the law, the nature of any 'investigation', and completing the 'investigation' greater than 60 days after the incident." Id. at 6 ¶ 14.

The Defendants first argue that Madison's complaint does not allege a violation of Louisiana Revised Statute 40:2531(B)(1). They contend that the statute only requires that the officer subject to an investigation be made aware of the investigation at the time he is interrogated and Madison does not allege that he was ever interrogated in connection with any investigation. See Record Document 19 at 10. Section (B)(1) of the statute clearly states that the police officer "being investigated shall be informed, **at the commencement of interrogation**, of the nature of the investigation and the identity and authority of the person conducting such investigation. . . ." La. R.S. 40:2531(B)(1) (emphasis added). The Court has carefully reviewed Madison's complaint and finds that it lacks any factual allegation which would refute the dismissal argument advanced by the Defendants. Madison does not allege in his complaint anything to support a finding that he was ever interrogated and the language of the statute is clear. See Howell v. Town of Ball, No. 12-CV-951, 2012 WL 6680364, at *2-3 (W.D. La. Dec. 21, 2012) (concluding same). Accordingly, the court agrees that Madison fails to allege facts which would support a claim for a violation of Section 2531(B)(1).[8]

Madison next asserts that Section 2531(B)(4) was violated by the Defendants. The right to be represented by counsel is detailed in Section (B)(4)(a) of Section 2531, which provides:

---

[8]The Court has reviewed the cases cited by Madison which he asserts stand for the proposition that an officer does not have to be interrogated before he receives protection under Section 2531. See Record Document 21 at 11 (citing In Re Hickman, 113 So.3d 1163, 1164 (La. App. 3d Cir. 2013) and Knight v. Dep't of Police, 619 So.2d 1116 (La. App. 4th Cir. 1993). However, these cases do not support Madison's arguments, as the statements made therein are summary assertions regarding the general applicability of the statute.

> The police employee or law enforcement officer **being questioned**, whether as a target or a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer's choice.

La. R.S. 40:2531(B)(4)(a) (emphasis added). Madison has not alleged that he was questioned during any investigation. The express language of the statute, and the lack of any allegation of questioning by Madison, clearly illustrates that Madison has failed to state a claim in this regard.

Finally, Madison alleges that the reopened investigation was not completed within the sixty day requirement of the statute contained in Section 2531(B)(7). This section states, in pertinent part, that investigations "shall be completed within sixty days. . . ." La. R.S. 40:2531(B)(7). However, the vague allegations of non-compliance made by Madison in his complaint do not suffice. He has not alleged any dates whatsoever in relation to this claim. He does not state the date on which an initial investigation was opened or closed, or when the reopened investigation was opened or closed. Instead, he asserts that the date Mayor Grogan began investigating him was *after* he complained of race discrimination or harassment. See Record Document 16 at 5 ¶ 12a (emphasis added). He then alleges that the investigation ended when he was terminated on November 4, 2017, "greater than 60 days after the incident." Id. at 6 ¶ 14. These are not sufficient allegations to state a plausible claim for relief that this section of the statute was violated. Madison has not provided any facts that would allow a meaningful analysis of this claim and his boilerplate allegations do not put the Defendants on notice of the grounds for which they are being sued. Accordingly, this Court finds that Madison has failed to allege facts which would support claims for any violations of Louisiana Revised Statute 40:2531.

## C.    Constitutional Violations.

Madison alleges that the Defendants have violated his Fourteenth Amendment rights as to liberty, property, and to be free from racial discrimination, and his First Amendment right to protected speech.  See Record Document 16 at 8-9 ¶¶ 18-18a.  The Defendants contend that Madison has failed to adequately plead any violations of the Constitution.

Title 42, United States Code, Section 1983, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  Section 1983 does not create substantive rights, rather it is simply a procedural vehicle that provides a remedy for violation of the rights that it designates.  See Harrington v. Harris, 118 F.3d 359, 365 (5th Cir.1997). Therefore, "an underlying constitutional or statutory violation is a predicate to liability under [Section] 1983."  Id.

### 1.    Fourteenth Amendment–Property Interest.

Madison contends that the Defendants violated his "rights to a property interest in his employment through state law, which specifically empowers [the] Patterson Chief of Police the authority to terminate his employment, a hearing prior to and in conjunction with his discharge as guaranteed pursuant to Louisiana law and, thus, his rights to due process guaranteed pursuant to the 14th Amendment to the United States Constitution."  Record

Document 16 at 9 ¶ 18.  The Defendants assert that Madison was an at-will employee and, therefore, he does not have a property interest in continued employment.  <u>See</u> Record Document 19 at 13.  Regardless of who had the authority to terminate him, Madison has failed to allege a claim in this regard.

To state a Fourteenth Amendment due process claim under Section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." <u>Baldwin v. Daniels</u>, 250 F.3d 943, 946 (5th Cir. 2001) (citation omitted).  To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law. . . . " <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).  A "public employee who has a property interest in [his] job cannot be fired without due process of law."  <u>Wallace v. Shreve Mem'l Library</u>, 79 F.3d 427, 429 (5th Cir. 1996) (citation omitted).  Whether a worker enjoys a property interest in his job is determined by state law, <u>i.e.</u>, Louisiana law in this case.  <u>See</u> <u>id.</u> (citation omitted).

Under Louisiana law, a person employed for an indefinite period of time is presumed an employee at will.  <u>See</u> <u>Gilbert v. Tulane Univ.</u>, 909 F.2d 124, 126 (5th Cir. 1990); La. Civ. Code art. 1778.  In order for Madison to prove that he has a property interest in his job, he must establish that he is not an employee at will.  He can do so by either (1) that he had a contract for a definite term, or (2) that his employer agreed to fire him only for cause. <u>See</u> <u>Wallace</u>, 79 F.3d at 430 (citation omitted); <u>see also</u> <u>Cobb v. City of Harahan</u>, 516 F. App'x 337, 341 (5th Cir. 2013) (property interest in continued employment where some source guaranteed employment for a specific length of time or provided that the employee

could be discharged only for specific reasons).  Under Louisiana law, an employee also

has a protected property interest in employment if he is a permanent classified employee

under the Louisiana civil service system.  See Wallace, 79 F.3d at 431 (citation omitted).

Madison has not alleged that he has a contract for a definite term, that his employer

agreed to fire him only for cause, or that he was an employee under the Louisiana civil

service system.  Rather, he attempts to create a property interest in his employment by

citing to the Police Officer's Bill of Rights, provisions of the Lawrason Act, and the

Patterson City Code.  See Record Document 21 at 15.  However, these statutes and code

provisions do not provide Madison a property interest in his employment and Madison does

not cite any law indicating otherwise.  Instead, Madison resorts to again arguing about who

had the authority to terminate him and that he was not afforded the protections of the

Police Officer's Bill of Rights.  See id.  These attempts are clearly insufficient to create a

property interest in his employment.  A similar argument was explicitly considered and

rejected by the Fifth Circuit in Cobb v. City of Harahan, 516 F. App'x 337, 341 (5th Cir.

2013).  In Cobb, the Fifth Circuit, in discussing the Lawrason Act, stated:

> Even assuming the Lawrason Act restricted [the] authority to
> fire Cobb without approval of the city council, it provided Cobb
> with no property interest in his continued employment.  The
> Lawrason Act says nothing about *why* his employment may be
> terminated; it only specifies *how* his employment may be
> terminated.  An ordinance "merely conditioning an employee's
> removal on compliance with certain specified procedures" does
> not endow that employee with a property interest in his
> employment.

Cobb, 516 F. App'x 337, 340 (5th Cir. 2013) (citation omitted) (emphasis in original); see

also Cabrol v. Town of Youngsville, 106 F.3d 101, 106 (5th Cir. 1997).  Madison has not

alleged a protected property interest in his employment. Accordingly, he has failed to state a claim for a violation of the Fourteenth Amendment in this regard.

### 2. Fourteenth Amendment–Liberty Interest.

Madison next alleges that the Defendants violated his "right to his liberty, good name, and reputation guaranteed pursuant to the 14th Amendment to the United States Constitution." Record Document 16 at 8 ¶ 18. "[D]ischarge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989), modified in part on other grounds, 901 F.2d 61 (5th Cir. 1990) (en banc). To succeed on such a claim, Madison must show that:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer refused his request for a hearing.

Miller v. Metrocare Servs., 809 F.3d 827, 833 (5th Cir. 2016) (citation omitted). In this context, false "does not mean that the stated reason for termination was pretextual. Rather, it means that the stated reason was factually incorrect." Lindberg v. Bossier Parish Ambulance Serv. Dist., 402 F. App'x 898, 902 (5th Cir. 2010).

In seeking dismissal of this claim, the Defendants focus their argument on the third element, which requires that the charges made against Madison were false.[9] Without

---

[9]The Court will not delve into the remaining elements of this cause of action at this stage, as the Defendants have only attacked the falsity element of the claim.

providing any support or citing any jurisprudence, they assert that Madison's actions toward Mincey constitute "textbook sexual harassment." Record Document 19 at 16. However, Madison repeatedly asserts in his complaint that the purported reason for his termination, i.e., sexual harassment, is false. See Record Document 16 at 6-8. For example, in his complaint, Madison alleges that "[a]s a result of defendant Grogan's unilateral termination of Petition due to the false allegations of sexual harassment, allegedly having committed the crimes of sexual assault and/or battery, Petitioner's reputation, honor, and integrity has been impuged [sic] within the police department and the community at large." Id. at 6 ¶ 15a.

The Court must not convert the plausibility requirement of pleading into an analysis of whether Madison is likely to succeed on the merits. See Twombly, 550 U.S. at 556, 127 S.Ct. at 1965. At this stage, Madison is only required to plead a plausible cause of action. He has done so with regard to his claim for a violation of his liberty interest under the Fourteenth Amendment.

### 3. Fourteenth Amendment–Race Discrimination.

Madison has also alleged that the Defendants violated his "right to be free from race discrimination guaranteed pursuant to the Fourteenth Amendment to the United States Constitution." Record Document 16 at 8 ¶ 18. In their motion to dismiss, the Defendants argue that Madison is "attempting to make a 42 U.S.C. § 1983 claim for hostile work environment." Record Document 19 at 16. They then cite the case of Fields v. Stephen F. Austin State University, wherein the Fifth Circuit stated, in a footnote, that "[w]e discover no Fifth Circuit caselaw holding that a Section 1983 claim based on a violation of equal protection rights (as opposed to a Title VII claim) may be brought for creation of a hostile

work environment due to race." <u>Fields</u>, 611 F. App'x 830, 833 n.3 (5th Cir. 2015). This is the *entirety* of the Defendants' argument as to this issue in their motion to dismiss, as they conclude that "Madison fails to plead a cause of action, because none exists, and this claim must be dismissed." Record Document 19 at 17.

The Defendants fail to mention that the <u>Fields</u> court noted that other circuits have held that "race-based workplace harassment can be violative of equal protection." <u>Fields</u>, 611 F. App'x at 833 n.3, citing <u>Bryant v. Jones</u>, 575 F.3d 1281, 1296 (11th Cir. 2009) and <u>Williams v. Seniff</u>, 342 F.3d 774, 788, 791 (7th Cir. 2003). Furthermore, this Court notes that the Fifth Circuit discussed a race-based hostile work environment claim under the Equal Protection Clause in <u>Caldwell v. Lozano</u>, 689 F. App'x 315, 321 (5th Cir. 2017). Thus, this Court concludes, at this stage of the pleadings, Madison has pled facts sufficient to raise a right to relief above the speculative level.[10]

### 4. First Amendment.

Madison next contends that he was terminated as a result of his "complaints of race discrimination/harassment." Record Document 16 at 5 ¶ 13. He alleges that he "enjoyed a clearly established right to report, protest, and oppose unlawful race discrimination

---

[10]In their reply brief, the Defendants again reiterate their one-sentence legal argument that there is "no Fifth Circuit caselaw holding that a Section 1983 claim based on a violation of equal protection rights (as opposed to a Title VII claim) may be brought for creation of a hostile work environment due to race," citing <u>Fields</u>. They then proceed to argue, for the first time in the reply, the elements of a race discrimination claim. This Court ordinarily does not consider arguments raised for the first time in a reply brief. <u>See</u> <u>James v. MRC Receivables Corp.</u>, No. 16-CV-0448, 2018 WL 3213147, at *7 n.4 (W.D. La. June 28, 2018) ("[T]he Court will not address this argument since it was raised for the first time in [the party's] reply memorandum."); <u>Weems v. Hodnett</u>, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) ("[A]rguments raised for the first time in a Reply brief are waived."), quoting <u>Jones v. Cain</u>, 600 F.3d 527, 541 (5th Cir. 2010). The Defendants are, however, free to re-urge this argument at the summary judgment stage.

pursuant to the 1st Amendment to the United States Constitution" and that the Defendants "violated his clearly established rights by subjecting her [sic] to discrimination, re-opened 'investigation', falsely accusing Petitioner of engaging in unlawful activities, and ultimately terminating him because he engaged in 1st Amendment protected speech." Id. at 9 ¶ 18a. To establish a Section 1983 claim for employment retaliation related to speech, Madison must show: (1) he suffered an adverse employment action, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the speech precipitated the adverse employment action. See Goudeau v. East Baton Rouge Parish Sch. Bd., 540 F. App'x 429, 434 (5th Cir. 2013), quoting Nixon v. City of Hous., 511 F.3d 494, 497 (5th Cir. 2007). The Fifth Circuit in Harris ex rel. Harris v. Pontotoc County School District reaffirmed the Court's standard for evaluating retaliation under the First Amendment:

> The First Amendment protects a public employee's speech in cases of alleged retaliation only if the speech addresses a matter of "public concern." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether speech is of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147–48, 103 S.Ct. 1684. "Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee." Terrell v. Univ. of Tex. Sys. Police, 792 F.2d 1360, 1362 (5th Cir.1986). Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or as an employee. Dodds v. Childers, 933 F.2d 271, 273 (5th Cir.1991). In cases of mixed speech or motives, "the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection." Id. at 274 (citation omitted). If the speech is not of public concern, we do not question the employer's motivations for taking action against the employee. Id. at 273.

635 F.3d 685, 692 (5th Cir. 2011) (emphasis in original).

In the Rule 12(b)(6) setting, this Court must determine the "character of [Madison's] speech by examining the content, form, and context of his statements, as revealed here by the pleadings." Schultea v. Wood, 27 F.3d 1112, 1119 (5th Cir. 1994), aff'd in part, 47 F.3d 1427 (5th Cir. 1995), citing Connick v. Myers, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 1690 (1983). However, Madison has made this a practical impossibility, as he has not identified the speech he claims to have addressed a matter of public concern and to have triggered retaliation, other than to broadly state that he "repeatedly complained and/or opposed the unlawful race discrimination/harassment to Defendants." Record Document 16 at 4 ¶ 8. As to whether this "speech" motivated the Defendants to fire him, he alleges:

> As a result of Petitioner's complaints of race discrimination/harassment, and over sixty (60) days after defendant Grogan reopened the "investigation" into Petitioner, on November 4, 2017, defendant Grogan unilaterally terminated Petitioner's employment for "sexual harassment"
> . . . .

See id. at 5 ¶ 13. Lacking, however, is the identification of the speech as to which First Amendment protection is claimed, which would permit consideration of its content, context, and form as required by the Supreme Court. See Foley v. Univ. of Hous. Sys., 355 F.3d 333, 342 (5th Cir. 2003), citing Connick, 461 U.S. at 147, 103 S. Ct. at 1690. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citation omitted). A review of the complaint reveals that Madison has provided only conclusory allegations as to this claim. He provides no facts to indicate the content of the speech or whether any of the

Defendants were even aware of the alleged protected activity. It is simply not possible to evaluate whether Madison spoke as a citizen on a matter of public concern considering the scant allegations made in his complaint. He does not allege a single actual complaint or statement that was made, when a complaint was made, to whom a complaint was made, the form of the complaint or the content of the complaint, other than general, vague assertions of "complaints." See Record Document 16 at 5 and 8. While the Court acknowledges that "speech relating to . . . racial discrimination almost always involves matters of public concern," Charles v. Grief, 522 F.3d 508, 514 (5th Cir. 2008), this does not excuse Madison from the requirements of Iqbal and Twombly. The complaint simply does not set forth any factual allegations as to what speech Madison may have uttered that would be a matter of public concern. Without these allegations, there is no way to evaluate the elements necessary to establish a cause of action. Accordingly, Madison has not alleged sufficient facts to state a plausible First Amendment claim.[11]

### D. Municipal Liability--Official Policy Or Custom.

As previously mentioned, 42 U.S.C. § 1983 provides a claim against anyone who, under color of state law, deprives another of his or her constitutional rights. In Monell v. Department of Social Services of the City of New York., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978), the Supreme Court held that Congress intended Section 1983 to apply to local government entities as well as to persons. The Monell Court further held that municipalities and local government agencies cannot be held liable for constitutional torts

---

[11]Moreover, Madison has not made sufficient factual allegations for this Court to reasonably infer that his allegedly protected speech was the motivating force behind the decision to terminate his employment.

under Section 1983 pursuant to a theory of respondeat superior, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." Id. at 694, 98 S. Ct. at 2037-38. Therefore, to succeed on a Monell claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. See Fuentes v. Nueces Cnty., Tex., 689 F. App'x 775, 777 (5th Cir. 2017), quoting Valle v. City of Hous., 613 F.3d 536, 541-42 (5th Cir. 2010). Locating an official policy or custom ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. See Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1832, 1388 (1997).

Existence of a policy or custom may be established in primarily two ways: (1) the existence of an officially adopted policy, regulation, or decision promulgated by individuals with policymaking authority; or (2) "a persistent, widespread practice of [] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Harris v. Jackson Cnty. Miss., 684 F. App'x 459, 463 (5th Cir. 2017), quoting Piotrowski v. City of Hous., 237 F.3d 567, 579 (5th Cir. 2001). A "customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 169 (5th Cir. 2010), citing

<u>Webster v. City of Hous.</u>, 735 F.2d 838, 842 (5th Cir. 1984) (en banc).  To survive a motion to dismiss, a complaint's "'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" <u>Balle v. Nueces Cnty., Tex.</u>, 690 F. App'x 847, 852 (5th Cir. 2017), quoting <u>Spiller v. City of Tex. City, Police Dep't</u>, 130 F.3d 162, 157 (5th Cir. 1997).  "Thus, pleadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" behind the constitutional violation.  <u>Id.</u>, citing <u>Colle v. Brazos Cnty., Tex.</u>, 981 F.2d 237, 245 (5th Cir. 1993); <u>King v. LeBlanc</u>, No. 16-CV-1745, 2017 WL 3405042, at *2 (W.D. La. July 20, 2017).

Madison has attempted to allege a custom by asserting that "Defendant Grogan began disciplining and/or terminating Patterson Police Department Officers without the authority of law."  Record Document 16 at 4 ¶ 12.  The Defendants argue that Madison "does not allege any facts which would allow this court to determine that a single other officer was terminated by Mayor Grogan, much less evaluate whether the terminations amounted to a custom."  Record Document 19 at 21.  The Defendants further assert that "even if Mayor Grogan did not possess such authority [to terminate Patterson Police Department Officers], which is wholly contested, and terminated enough officers to amount to a custom, of which no specific factual allegations are made, then the alleged 'custom' would still not cause a deprivation of any constitutional rights, it would only violate a Louisiana statute."  <u>Id.</u>  This Court agrees.

Madison counters that he has alleged that the City of Patterson, through Mayor Grogan, "engaged in a policy, practice, and custom of terminating him and other 'Patterson

Police Department Officers without the authority of Louisiana law." Record Document 21 at 20. His complaint alleges that "Defendants engaged in a policy, practice, and custom which violated Petitioner's clearly established rights under the United States Constitution and Louisiana Constitution." Record Document 16 at 8 ¶ 17a. These allegations constitute the totality of his allegations regarding a policy, practice or custom as to this issue. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Madison does not point to any other allegations in his complaint that would establish an official policy of terminating officers promulgated by the policymaker that was the driving force behind the violation of a constitutional right. He clearly has not stated a claim against the City of Patterson for a violation of Section 1983 with regard to a policy, practice, or custom of terminating him or other Patterson police officers without the authority of law.[12]

_____

[12]Madison may also establish municipal liability based on a single decision "rendered by an individual with 'final policymaking authority,'" as determined under state law. Gelin v. Housing Auth. of New Orleans, 456 F.3d 525, 527 (5th Cir. 2006) (citation omitted). "[P]laintiffs can hold municipalities liable for single instances of conduct perpetrated by the policymakers themselves; such one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions." Milam v. City of San Antonio, 113 F. App'x 622, 626 (5th Cir. 2004). Madison also fails to state a claim under this narrow exception and has simply not alleged any "policy." Madison has also failed to allege that an official policy was the driving force behind the violation of a constitutional right.

### E.    Claims Against Mayor Grogan.

Madison's complaint names Mayor Grogan as a defendant in his individual capacity and in his official capacity as the Mayor of the City of Patterson.  He has also sued the City of Patterson.  See Record Document 16 at 1.  The Defendants argue that "due to their legal redundancy, all claims against Mayor Grogan, in his official capacity, must be dismissed." Record Document 19 at 19.[13]

It is true that courts have held that when the government entity itself is a defendant, claims against entity members/officers in their official capacities are redundant and appropriate for dismissal.  See Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001).  However, there is, at this stage of the proceedings, no benefit from the dismissal of Mayor Grogan in his official capacity as to the remaining causes of action.[14]  Although inartfully pled, some of the claims that have been alleged are not identical as to Mayor Grogan and the City of Patterson.  Under the standards of Rule 12(b)(6), the official capacity claims against Mayor Grogan will not be dismissed at this stage of the proceedings.[15]

_____

[13]The Defendants, however, fail to mention that the courts who have found that official capacity claims are redundant are referencing claims pursuant to Section 1983 and, thus, *all* of the claims against Mayor Grogan would not necessarily be subject to dismissal.

[14]The Defendants are, however, free to re-urge this argument at the summary judgment stage.

[15]In a section of their brief entitled, "The claims against Mayor Grogan should be dismissed," the Defendants briefly reference the defense of qualified immunity, spending the entirety of two paragraphs on the argument.  Record Document 19 at 19-20.  The first paragraph states the general rules for qualified immunity with citation to numerous cases.  However, it contains no in-depth discussion of the cases cited and no comparison of the facts of this case to the facts of similar cases in which a qualified immunity defense was asserted.  Instead, in the second paragraph, the Defendants summarily assert that

Based on the foregoing analysis, the Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted (Record Document 19) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** to the extent that it seeks dismissal of Madison's claims for violations of the Police Officer's Bill of Rights, Louisiana Revised Statute 40:2531.  All claims pursuant to this statute are **DISMISSED WITH PREJUDICE**. The motion is further **GRANTED** to the extent that it seeks dismissal of Madison's claims pursuant to the Fourteenth Amendment for a violation of his rights to a property interest in his employment, and this claim is **DISMISSED WITH PREJUDICE**.  The motion is further **GRANTED** to the extent it seeks dismissal of Madison's claim for a violation of his free speech rights pursuant to the First Amendment and this claim is **DISMISSED WITH PREJUDICE**.  The motion is further **GRANTED** to the extent it seeks the dismissal of

---

Madison has failed to allege facts that constitute a violation of the First or Fourteenth Amendments (although this Court has found otherwise), and then conclude, without analysis, that "Madison does not allege facts that amount to the violation of any legally 'clearly established' right," and that Madison "does not allege facts demonstrating objectively unreasonable conduct by Mayor Grogan."  The Defendants then surmise that "all claims against Mayor Grogan, in his individual capacity, must also be dismissed."  Id. at 20.  This is the *entirety* of their assertion of entitlement to qualified immunity.  Simply stated, Mayor Grogan has not demonstrated that he is entitled to qualified immunity as to any of the remaining claims in his individual capacity.  Furthermore, even had the Defendants adequately asserted this defense, the allegations in the complaint are sufficient for the claims to survive Rule 12(b)(6) and qualified immunity scrutiny at this stage of the proceedings.

[16]In their motion to dismiss, the Defendants also contend that they are entitled to recover attorney's fees.  See Record Document 19 at 22.  In Dean v. Riser, 240 F.3d 505, 508 (5th Cir. 2001), the Fifth Circuit stated that "attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit."  Id.  This showing has not been made and, thus, the Defendants' request is **DENIED**.

Madison's Section 1983 claims against the City of Patterson with regard to a policy, practice, or custom of terminating him or other Patterson police officers without the authority of law, and this claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** in all other respects. This leaves Madison's claims regarding his termination and the proper authority for such, his claims under the Fourteenth Amendment for violations of his liberty interest, and his claims under the Fourteenth Amendment for racial discrimination.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of September, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT